NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**THE SHERWIN-WILLIAMS COMPANY,**
*Plaintiff-Appellant*

**v.**

**PPG INDUSTRIES, INC.,**
*Defendant-Cross-Appellant*

_____

2022-2059, 2022-2102

_____

Appeals from the United States District Court for the Western District of Pennsylvania in No. 2:17-cv-01023-JFC, Senior Judge Joy Flowers Conti.

_____

Decided: July 25. 2024

_____

GREGORY A. CASTANIAS, Jones Day, Washington, DC, argued for plaintiff-appellant. Also represented by JENNIFER L. SWIZE; JOSEPH FARLEY, Columbus, OH.

CATHERINE EMILY STETSON, Hogan Lovells US LLP, Washington, DC, argued for defendant-cross-appellant. Also represented by CELINE JIMENEZ CROWSON, WILLIAM HAVEMANN, SEAN MAROTTA, JOSEPH JAMES RAFFETTO, DANA A. RAPHAEL, NICHOLAS ROTZ, DANIELLE DESAULNIERS

2      SHERWIN-WILLIAMS COMPANY v. PPG INDUSTRIES, INC.

STEMPEL; COREY T. LEGGETT, JOHANNAH WALKER, San
Francisco, CA.

_____

Before DYK, PROST, and STARK, *Circuit Judges.*

DYK, *Circuit Judge.*

The Sherwin-Williams Company ("Sherwin" or "Sherwin-Williams"), the owner of U.S. Patent No. 8,617,663 ("'663 patent"), U.S. Patent No. 8,835,012 ("'012 patent"), U.S. Patent No. 9,242,763 ("'763 patent"), U.S. Patent No. 9,415,900 ("'900 patent"), and U.S. Patent No. 9,862,854 ("'854 patent"), appeals from a judgment of patent invalidity from the District Court for the Western District of Pennsylvania.

We conclude that substantial evidence supports the jury verdict of anticipation, and that the district court did not abuse its discretion in excluding a stipulation of infringement and excluding evidence of PPG Industries, Inc. ("PPG")'s prior patents. We also conclude that judicial estoppel precluded Sherwin from presenting evidence to contradict its admission that the prior art, U.S. Patent No. 5,714,539 ("Perez patent"), discloses a BPA-free substance (a requirement of the asserted claims). We thus affirm as to Sherwin's appeal. As to PPG's cross-appeal, we agree with the district court that Sherwin's unilateral covenant not to sue on the parent patents did not create an implied license for continuation patents, and affirm on the cross-appeal.

BACKGROUND

I

Some background concerning an earlier proceeding is necessary to understand the current appeal. In March 2012, PPG first initiated patent reexamination of two

Sherwin-Williams[1] patents that are the parent patents to the continuation patents at issue here. *PPG Indus., Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002, 1004 (Fed. Cir. 2017) (nonprecedential) ("*Valspar I*"). These Sherwin patents claimed a beverage can coating and required that the composition be substantially free of BPA. The patent claims were found unpatentable as obvious over a combination including the prior art Perez patent in the reexamination proceedings but then on appeal were found not unpatentable by the Patent Trial and Appeal Board ("Board"). In the course of the reexamination, Sherwin represented to the examiner and to the Board that the composition disclosed in the prior art Perez patent was BPA-free and that it therefore lacked the necessary flexibility to provide a reasonable expectation of success in creating a beverage can coating by combining Perez with Christenson. PPG appealed to our court, and Sherwin provided PPG a unilateral covenant not to sue "with respect to the two patents that are the subject of the [Board] decisions" and argued that "PPG's appeal had become moot as a result of the Covenant Not to Sue." *Id.*

We concluded that the case was mooted by the covenant not to sue, vacated the decisions of the Board, and dismissed the appeal. Thereafter, the Board "ordered the proceedings remanded to the examiner with instructions to issue reexamination certificates rejecting all the challenged claims." *Valspar Sourcing, Inc. v. PPG Indus., Inc.*, 780 F. App'x 917, 919 (Fed. Cir. 2019) (nonprecedential) (*"Valspar II"*). In a subsequent appeal, we held that the

---

[1]    Valspar then owned the patents, U.S. Patent No. 7,592,047 ("'047 patent") and U.S. Patent No. 8,092,876 ("'876 patent"). Sherwin-Williams acquired Valspar and is now the owner of the patents. For convenience, we refer to both Valspar and Sherwin as "Sherwin" or "Sherwin-Williams."

"Board misinterpreted our opinion and mandate from *Valspar I*," vacated the Board's decision, and remanded to the Board to "conclud[e] the reexaminations by vacating the proceedings without any further adjudication." *Id.* at 922–23.

During the appeal at our court in *Valspar I*, Sherwin-Williams filed an infringement suit against PPG for five asserted claims of the continuation patents. This litigation was eventually transferred to the District Court for the Western District of Pennsylvania and underlies the appeal here. The asserted patent claims at issue in this appeal are set forth in Appendix A of this opinion.[2]

II

In the present Sherwin infringement suit, PPG defended on the ground that the asserted claims were invalid as anticipated by Perez or as obvious over Perez alone or in combination with other prior art. Before and during trial in this case, the district court made several evidentiary rulings that are at issue on appeal. First, the asserted claims required that the patented material be substantially BPA-free. "Into the 2000s, food-and-beverage-can coatings contained epoxy. A major component of epoxy—its backbone . . . —is a repeating compound called bisphenol A ('BPA')." Appellant's Op. Br. 4 (citations and internal quotations omitted). BPA epoxy was known to be flexible, making it desirable for these coatings. The district court held that Sherwin-Williams was estopped from presenting evidence that the composition disclosed by Perez was not BPA-free, having prevailed on that issue at the prior proceedings before the Board discussed above. It instructed

---

[2]    The asserted claims in this appeal are claim 28 of the '663 patent, claim 7 of the '012 patent, claim 40 of the '763 patent, claim 26 of the '900 patent, and claim 6 of the '854 patent.

the jury that "[t]he Perez patent discloses a BPA-free coating." J.A. 38992. The district court also excluded evidence regarding PPG's stipulation of infringement executed in this proceeding, finding that it would confuse the jury, and excluded evidence regarding PPG's prior patents, finding they were not relevant and would confuse the jury.

The jury reached a verdict that each of the asserted claims was invalid as anticipated and obvious. Addressing Sherwin's post-trial motions for judgment as a matter of law ("JMOL") and for a new trial, the district court concluded that there was substantial evidence for the jury to find that PPG proved anticipation. Although the court noted that it need not reach the obviousness verdict in light of the anticipation verdict, it found that there was substantial evidence to uphold the jury's obviousness verdict. *Sherwin-Williams Co. v. PPG Indus., Inc.*, 607 F. Supp. 3d 600, 611 (W.D. Pa. 2022). In denying a new trial, the district court also reaffirmed its evidentiary rulings and concluded that the verdict was not against the great weight of the evidence.

Previously, on cross-motions for summary judgment, the district court also concluded that Sherwin's unilateral covenant not to sue issued in the appeal of the reexamination proceedings did not grant an implied license to PPG for uses of Sherwin's continuation patents.

Sherwin-Williams appeals the judgment of invalidity, and PPG cross-appeals the ruling on a lack of an implied license. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Sherwin's Appeal

A. Sherwin's Motion for Judgment as a Matter of Law

On appeal, Sherwin-Williams argues that no reasonable jury could find that Perez anticipated or rendered obvious the asserted claims.

Anticipation is a question of fact. *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006). "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1376 (Fed. Cir. 1999) (quoting *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997)). "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). The analysis "must be based on several factual inquiries: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art at the time the invention was made; and (4) objective evidence of nonobviousness, if any." *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)). We review "district court decisions on [JMOL] motions de novo," to determine whether the jury verdict is supported by substantial evidence. *SRI Int'l, Inc. v. Cisco Sys. Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019) (citing *Acumed LLC v. Adv. Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009)).

We first consider whether the anticipation verdict is supported by substantial evidence. Sherwin argues that no reasonable jury could find that Perez discloses organic solution polymerization, as required by four of the asserted claims. These claims require that, for example, the polymer "comprises an organic-solution polymerized acid- or anhydride-functional polymer." *See, e.g.*, '012 patent, claim 7. Sherwin explains that water-based polymerization,

instead of organic solution polymerization, was preferably used because it was thought to reduce the amount of volatile organic compounds that may be emitted from the coatings. Emission of these compounds was seen as environmentally undesirable, and Sherwin argues that the Perez patent disclosed only water-based polymerization, evidenced by the fact that the examples in Perez only describe water-based polymerization.

At trial, PPG presented inventor and expert testimony that, in addition to water-based polymerization, "the Perez Patent disclosed organic solution polymerization and that a person of ordinary skill in the art ('POSITA') would understand that the Perez patent disclosed organic solution polymerization." *Sherwin-Williams*, 607 F. Supp. 3d at 608. In the background section of Perez, the specification describes another patent ("Ranka"), and states that "U.S. Pat. No. 4,647,612 (Ranka et al.) discloses core-shell latices in which the shell may be an acrylic polymer made by organic solution polymerization." Perez patent, col. 1, ll. 32–34.

Sherwin argues that Ranka's disclosures cannot be read to be part of the Perez patent, relying on *Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d 1471 (Fed. Cir. 1986). This reliance is misplaced. In *Akzo*, the International Trade Commission rejected the argument that the asserted claim was "anticipated by the Hill and Smith patents which were referenced in the Morgan '645 patent," and this court affirmed. *Id.* at 1480. But incorporation was not PPG's theory. PPG did not rely on incorporation of Ranka. PPG argued that Perez itself disclosed organic solution polymerization.

Sherwin argues that Perez's disclosure in the background of the specification is not a sufficient disclosure. The fact that this sentence was found in the background of the specification does not render it irrelevant. In *Hill-Rom Services, Inc. v. Stryker Corp.*, we held that when the

8    SHERWIN-WILLIAMS COMPANY v. PPG INDUSTRIES, INC.

"Background of the Invention of the patents-in-suit describes a prior art patent disclos[ure]," "[t]his is an unequivocal disclosure, in the patent itself," of the technology disclosed. 755 F.3d 1367, 1375 (Fed. Cir. 2014). The same applies to a disclosure in the background of the specification of a prior art reference.

Finally, Sherwin contends that "Perez both distinguishes and disparages Ranka" when it describes organic solution polymerization in the background section. Appellant's Op. Br. 30. We have held that "a reference is no less anticipatory if, after disclosing the invention, the reference then disparages it." *Upsher-Smith Lab'ys, Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1324 (Fed. Cir. 2005) (quoting *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001)). Here also, Sherwin's expert Dr. Schork admitted that organic solution polymerization was "well known in the art," and it is against this background that a POSITA would have read the Perez patent to disclose organic solution polymerization. J.A. 39564–65 (at 118:18–22). PPG presented expert testimony that a person of ordinary skill would have understood from reading the Perez patent that it disclosed organic solution polymerization. The jury verdict in this respect was supported by substantial evidence.[3]

---

[3]    Additionally, the Perez patent later discloses that "the present inven[ti]on does not preclude small amounts of organic solvents from being included for purposes known in the art if desired." Perez patent, col. 5, ll. 48–50. Sherwin contends that this portion of the Perez patent refers only to adding organic solvents after polymerization, relying on testimony of its expert, who explained that this section refers only to amounts of organic solvent "added 'after the polymerization is over.'" Appellant's Response & Reply Br. 6 (quoting J.A. 39539 at 93:21); *see also* J.A. 39540. But

Sherwin next argues that the jury verdict of anticipation was not supported by substantial evidence because Perez does not disclose two testing limitations, required by claim 40 of the '763 patent and claim 6 of the '854 patent. Claim 40 requires "a global extraction result of less than 50 ppm" while claim 6 requires both this extraction result and "a metal exposure of less than 3 mA on average." '763 patent, col. 61, ll. 50–51; '854 patent, col. 59, l. 35. As Sherwin admits, PPG's expert, Dr. Storey, made and tested a coating which he testified was "made 'according to the teachings of Perez'" and found that the coating met the testing limitations. Appellant's Op. Br. 49 (quoting J.A. 39195 at 192:16). The jury was entitled to credit this testimony and to find that these testing limitations were met. In this respect also, the jury verdict was supported by substantial evidence.

Sherwin urges that there was not substantial evidence that the beverage can limitation was met by the Perez prior art. The asserted claims require variations of an "inside spray beverage can coating" or "a method [of] . . . spray applying the coating composition [on]to an interior surface of a[n aluminum] food or beverage can." '663 patent, col. 58, ll. 60–61; '012 patent, col. 59, ll. 29–31; '763 patent, col. 61, ll. 27–29; '900 patent, col. 57, l. 56; '854 patent, col. 59, l. 8. In support, Sherwin urges that "Perez's 18 exemplary latex polymers are . . . untethered to food or beverage cans." Appellant's Op. Br. 31. Dr. Storey, PPG's expert testified at trial that "based on the test procedures, a POSITA would understand that Perez disclosed an inside spray beverage can coating." *Sherwin-Williams*, 607 F. Supp. 3d at 609. PPG's expert provided testimony about three tests disclosed in Perez, the detergent test, the tape-adhesion test,

---

PPG presented evidence to the contrary, and the jury was entitled to credit that testimony. J.A. 39270 at 43:13–24.

and the phosphoric acid test, which all are "used for the testing of coatings for interior[s] of beverage cans." J.A. 39172 at 169:7–9. He explained that "the presence of these teachings within the Perez patent would indicate to someone of ordinary skill in the art that these coatings were directed toward interior spray coatings." *Id.* at 169:10–13. We agree that the jury's finding that Perez disclosed this limitation was supported by substantial evidence.

Sherwin also alleges that there was not substantial evidence that the Perez patent discloses "more than 5 wt-%" oxirane-group-containing monomer, as claim 26 of the '900 patent requires. '900 patent, col. 59, ll. 36–37.

The asserted claim describes the presence of an oxirane-containing monomer "in an amount of more than 5 wt-%." *See* '900 patent, col. 59, ll. 35–36. Thus, any amount in excess of 5% satisfies the claim limitation. Sherwin-Williams contends that substantial evidence does not support the jury verdict that Perez discloses such an amount.

The specification in the Perez patent describes the presence of unsaturated epoxy cross-linking monomer—undisputedly an oxirane-containing monomer—"in amounts of 0 to 5 percent by weight." Perez patent, col. 5, ll. 12–13. PPG argues on appeal, however, that its expert explained during the jury trial that the unsaturated epoxy crosslinking monomer—i.e., the "oxirane-group containing monomer" relevant here—is only one type of crosslinking monomer. The expert also testified that "[t]he Perez Patent teaches an oxirane amount above 5% because [there are] different kinds of crosslinking monomers," for example, a "multi-functional vinyl" compound, and that "Perez teaches that you can use any or all of these things," including an oxirane-containing monomer to amount to a total up to 20%. *Sherwin-Williams*, 607 F. Supp. 3d at 609 (internal quotations omitted). Testimony by the inventor of Perez was to the same effect. *See* J.A. 39141 at 138:3–6 ("One can

learn from the patent that if you select only one of those, you might use just one in higher amounts versus using the other two."). The district court correctly found that the testimony of the expert and Perez himself together reasonably support the conclusion that the specification of Perez discloses as much as 20 percent by weight of an oxirane-containing monomer, well in excess of the claim limitation. Although Sherwin's expert presented competing testimony that the Perez patent does not teach using more than 5% of oxirane containing monomers, whether a prior art reference discloses the limitations of a particular claim is a question of fact, and the jury was free to credit the testimony of PPG's witnesses and reject that of Sherwin's expert. *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1363–64 (Fed. Cir. 2012). The jury's conclusion that Perez satisfied the "greater than 5% oxirane-containing monomer" limitation is thus supported by substantial evidence.

On appeal, Sherwin emphasizes that the plain and ordinary language in the Perez specification shows that "Perez is specific about the amount of oxirane-containing monomer: '0 to 5 percent.'" Appellant's Br. 53. No doubt the jury, having heard competing evidence as to how a person of ordinary skill in the art would have read Perez, could have been persuaded by this contention. It was not. Sherwin has not persuaded us that the jury was presented less than substantial evidence to reach the conclusion it did.[4]

---

[4]    Although not argued by PPG, we note that contrary to Sherwin-Williams' argument, the plain and ordinary meaning does not compel its interpretation of Perez. Our precedents observe that "standard scientific convention" would lead persons of ordinary skill in the art to read numbers to include a certain degree of rounding absent evidence that the term has a different meaning in context.

We affirm the denial of Sherwin's JMOL motion because the jury's verdict as to anticipation was supported by substantial evidence. We need not reach the question whether the jury verdict as to obviousness was supported by substantial evidence. Because Sherwin does not present a separate argument, we affirm, for the same reasons, the district court's decision denying Sherwin's motion for a new trial on the ground that the verdict was against the great weight of the evidence.

## B. Sherwin's Motion for a New Trial Based on Evidentiary Rulings

Sherwin also appeals the denial of its motion for a new trial based on allegedly erroneous evidentiary rulings. We review the district court's evidentiary rulings for abuse of discretion. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

### 1. Federal Rule of Evidence 403 Exclusions

Sherwin urges that the district court erred in excluding evidence regarding PPG's stipulation of infringement. Sherwin contends that "PPG's stipulation would have demonstrated copying, which is 'always relevant' as an objective indicator of non-obviousness." Appellant's Op. Br. 60–61 (quoting *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1138 (Fed. Cir. 2019)). This evidence does not appear relevant to the jury's verdict of anticipation, and, on appeal, we do not reach the obviousness verdict. In any event,

---

*See, e.g.*, *AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1329 (Fed. Cir. 2021); *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1320 (Fed. Cir. 2001). If this convention is applied here, it would follow that a person of ordinary skill could read Perez as disclosing up to 5.4% of oxirane-containing monomer, anticipating the claim limitation requiring more than 5%.

the exclusion was not an abuse of discretion. The district court found that "[n]othing in the stipulation helps resolve the merits of the anticipation, obviousness, etc., questions that must be decided by the jury" and "[a] jury of laypersons may fail to appreciate the distinction between 'infringement' and 'invalidity,'" and thus found there was a potential for jury confusion. J.A. 86.

Under Rule 403, "a district court 'may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Prism Techs. LLC v. Sprint Spectrum, L.P.*, 849 F.3d 1360, 1368 (Fed. Cir. 2017) (quoting Federal Rule of Evidence 403). "[T]he Rule commits the weighing to the district court's 'broad discretion.'" *Id.* (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)).

Here, the district court carefully weighed the probative value of this stipulation against countervailing considerations. The district court did not abuse its discretion when it excluded the stipulation of infringement.

Sherwin also contends that a new trial is warranted because the district court erred in excluding evidence of PPG patents filed after the asserted claims' priority date. Sherwin argued that these patents were relevant to show industry surprise that acrylic latexes could be used for beverage can coatings. *See also* Sherwin Williams Response to PPG's Motion to Preclude Testimony of Dr. Robert A. Iezzi at 8, Sherwin-Williams Co. v. PPG Indus. Inc., No. 2:17-cv-01023-JFC, ECF No. 448 (W.D. Pa.) ("What these three patents show is that *even after* the priority date of the Asserted Patents, a POSITA remained skeptical that acrylic-based coatings, like those described in Perez, could be used for interior beverage can coatings."). Again, this evidence appears to have little relevance to the jury's verdict of

14     SHERWIN-WILLIAMS COMPANY v. PPG INDUSTRIES, INC.

anticipation, and we do not on appeal reach the obviousness verdict. In any event, even assuming PPG's prior patents were potentially relevant to show whether Perez was directed to can coatings, the district court determined that "any potential relevance [of the later-filed patents] is substantially outweighed by the danger of unfair prejudice" and "confusion of the issues between the general term 'acrylics' and the more specific term 'acrylic latexes.'" J.A. 49. The district court did not abuse its discretion in excluding these patents under Rule 403.

### 2. Judicial Estoppel Ruling

At trial, a central issue concerning anticipation was whether Perez satisfied the limitation of the patents requiring that the compound be substantially BPA-free. The asserted claims require that the "coating composition is made without using PVC compounds, BPA, or aromatic glycidyl ether compounds," '012 patent, col. 59, ll. 26–28, or that it is "substantially free of bound BPA and aromatic glycidyl ether compounds." '663 patent, col. 58, ll. 51–52; '763 patent, col. 61, ll. 32–33; *see also* '900 patent, col. 57, ll. 66–67, ("wherein the coating composition is substantially free of bound [BPA]"); '854 patent, col. 59, l. 27, ("substantially free of mobile and bound [BPA]"). PPG maintained that Sherwin, in the earlier reexamination proceedings, argued that Perez disclosed a BPA-free composition, and the district court instructed the jury that Perez disclosed a BPA-free coating. Sherwin argues that it should have been permitted to introduce evidence that the admission was erroneous and that Perez's composition was not BPA-free. We find that Sherwin-Williams is judicially estopped from changing its position as to this issue and that the district court properly excluded Sherwin's evidence that Perez was not BPA-free.

We first consider whether to apply regional circuit law or Federal Circuit law. Sherwin relies on cases where we have held that judicial estoppel is a question of regional

circuit law.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1374 (Fed. Cir. 2015).  However, those cases involved claimed judicial estoppel arising from previous conduct in district court proceedings.  *See, e.g., Wang Lab'ys, Inc. v. Applied Comput. Scis., Inc.*, 958 F.2d 355, 358 (Fed. Cir. 1992).  Here, in contrast, the issue arose from conduct in an adjudicatory proceeding before the Patent and Trademark Office ("PTO") over which we have exclusive jurisdiction, and where Federal Circuit law governs procedural issues.  *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1368 (Fed. Cir. 2002) ("Federal Circuit law applies to causes of action within the exclusive jurisdiction of the Federal Circuit.").  Because the question of judicial estoppel arises from statements made before the PTO in an adjudicatory proceeding, we apply Federal Circuit law. *See, e.g., Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1368 (Fed. Cir. 2020) (applying Federal Circuit law to judicial estoppel when the statements were made to the Armed Services Board of Contract Appeals).[5]

"The decision whether to invoke judicial estoppel lies within the court's discretion, and a refusal to apply the doctrine is reviewed under the 'abuse of discretion' standard." *Id.* (quoting *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996)).  In *New Hampshire v. Maine*, the Supreme Court delineated three nonexclusive factors to guide the judicial estoppel inquiry: (1) whether the "party's later position [is] 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later

---

[5]    *But cf. Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1376–77 (Fed. Cir. 2000) (applying regional circuit law when the statements were made to the PTO in a non-adjudicatory trademark registration process).

proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  532 U.S. 742, 750–51 (2001) (first quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); and then quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)).

Each of these factors is met here, and the district court did not abuse its discretion in estopping Sherwin-Williams from changing its position.  We address each factor.

(1) Clearly Inconsistent Statements

Sherwin's current position, that Perez does not disclose a BPA-free compound, is clearly inconsistent with its prior position—that Perez does disclose a BPA-free compound. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999).  Contrary to Sherwin's argument, this is not a situation in which Sherwin simply agreed with PPG's representation that Perez was BPA-free, nor was this argument "irrelevant to the reexamination proceedings," as Sherwin now contends.  Appellant's Op. Br. 58.  In the reexamination proceedings described above involving two parent patents, Sherwin argued at length to the examiner and to the Board that there was no reasonable expectation of success in combining Perez with Christenson (a patent directed to beverage can coatings).  Sherwin urged that the Perez compound was not sufficiently flexible for use in beverage cans because it did not contain BPA-based epoxy.

In its initial request for reexamination, PPG first asserted that Perez satisfied the requirement of a composition that is substantially free of BPA.  The examiner in May 2012 non-final office actions found that "[s]ince PEREZ makes no teaching as to the presence of bisphenol A [BPA] or aromatic glycidyl ethers, it is the position of the examiner that they are not present." Appendix at 3333, PPG Indus. Inc. v. Valspar Sourcing, Inc. ("*Valspar I*"), 679 F.

App'x 1002 (Fed. Cir. 2017) (No. 16-1406).[6]  The examiner ultimately found that it would have been obvious to combine Perez with another piece of prior art to render the claims obvious.

Sherwin-Williams responded to the non-final office action requesting reconsideration.  In its response to the examiner, Sherwin-Williams explained that "[b]ecause of its use of epoxies, [another prior art patent]'s coating contains BPA," Appendix at 3901, *Valspar I*, but agreed with the examiner that "Perez, on the other hand, is a BPA-free coating ([Sherwin] agrees with the Office's finding in this regard)."  *Id.*  Sherwin continued that "can-interior coatings require flexibility, and Perez's coatings are relatively inflexible acrylics," being BPA-free.  *Id.* at 3902.  Thus, Sherwin took the position that it was the very fact that Perez was BPA-free that showed that Perez lacked flexibility, which is a necessary characteristic of a beverage can coating.

The examiner did not adopt Sherwin's position and found the claims obvious over the combination of Perez and the other prior art reference.  But Sherwin appealed to the Board, explaining that "epoxy-based coatings typically include epoxy materials derived from a chemical known as BPA . . . .  BPA-based [e]poxies have been particularly useful in can-interior coatings, however, because they have properties (such as flexibility and corrosion resistance) that allow them to meet the stringent requirements of the field."  Appendix at 10008, *Valspar I*.  Sherwin continued in its brief, "Perez would not have appeared to be sufficiently flexible, because Perez uses an acrylic latex polymer [*i.e.*, not a BPA-containing epoxy].  Acrylics as a class were known to be relatively inflexible." *Id.* at 10023.

---

[6]     We refer to this appendix throughout the opinion as "Appendix, *Valspar I*."

Sherwin further submitted an expert declaration of Dr. Brandenburger, representing that "[Sherwin] conducted, at [his] direction, a test of Perez example #18 to measure its flexibility." *Id.* at 3106. Perez example #18 is BPA-free. This test, Sherwin argued, proved that "Perez's coating did not have sufficient flexibility to serve as a can-interior coating." *Id.* at 10026 (emphasis omitted); *see also id.* at 10135 (Reply Brief to Board) ("[Sherwin] proved its point by actually testing Perez.").

At oral argument before the Board, Sherwin explained that "epoxy acrylates . . . had BPA," but that is "the distinction between a polymer that we would call epoxy acrylate and a polymer that we would call acrylic." *Id.* at 2007. "Perez . . . [is] really [an] acrylic polymer[]. There is no epoxy in there to give it the inherent flexibility that an epoxy has, but a person of ordinary skill in the art recognizes that primarily acrylic polymers are inherently inflexible." *Id.* "But the person of ordinary skill in the art approaching the problem in 2004 understands that [BPA-free] acrylics, as a class, are inflexible, and so viewing Perez . . . would see that immediately and would have a disincentive to actually make those combinations." *Id.* at 2012.

The Board was persuaded by Sherwin's argument. It found that "Patent Owner's argument that flexibility is a necessary characteristic of a coating composition that is used to coat the interior of a can is well-supported by the evidence of record." *Id.* at 10. In so finding, the Board relied heavily on the tests conducted by Dr. Brandenburger—tests that showed that Perez would not have sufficient flexibility to be considered as a can coating because it did not have a BPA epoxy.[7]

---

[7]     After PPG appealed, Sherwin continued to make this distinction. In its brief to the Federal Circuit, Sherwin

Sherwin does not appear to dispute that in the reexamination proceeding it argued that Perez was BPA-free, but it now attempts to about-face and argue that Perez, in fact, contains BPA. To do so, it relies on the testimony of a new expert, Dr. Schork, who reviewed PPG's laboratory notebooks from 1992 and proposed to testify that these notebooks would show that a Perez embodiment described in the notebooks would contain BPA. Sherwin argues that in the reexamination proceedings, it did not know that Perez contained BPA and that this lack of knowledge should bar the application of judicial estoppel. Appellant's Op. Br. 58.

To be sure, judicial estoppel may be inapplicable "when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753 (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). While the acquisition of new information can, in some circumstances, preclude judicial estoppel, we do not find that the new information here amounts to the "significant change in the facts" required to justify a change in position. *See, e.g., Spencer v. Annett Holdings, Inc.*, 757 F.3d 790, 797 (8th Cir. 2014).

Our cases require a clear showing of inadvertence or changed circumstances. "Once a party takes a position in litigation, it cannot lightly about-face." *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1357 (Fed. Cir. 2010) (finding that the appellant did not provide an adequate reason for its change in position). Far from "inadvertence or mistake," Sherwin gathered expert testimony regarding Perez's inflexibility because it lacked BPA, created its own sample of Perez, and conducted

---

argued that "[another prior art patent] deals with a radically different polymer system than Perez: an epoxy-acrylate containing BPA" and that "[c]oatings using BPA were known to have excellent flexibility." Sherwin Response Br. at 50, *Valspar I*; *see also* Appellee Response Br. 9.

20    SHERWIN-WILLIAMS COMPANY v. PPG INDUSTRIES, INC.

flexibility testing on that sample—all evidence it presented to the Board.

Applying the inadvertence exception here is particularly inappropriate given the weakness of Sherwin's new evidence purportedly showing that its original position was error. The lab notebooks discuss the addition of BPA-containing phosphatized epoxy to the coating made in accordance with Perez example #18. J.A. 19416–17. The disclosure of the Perez patent itself does not require this epoxy; the notebooks only discuss the addition of BPA-containing epoxy when the examples in Perez were formulated into complete coatings. J.A. 19418. That the complete coating might have additional elements containing BPA has minimal probative value of what Perez's disclosure itself requires. We conclude that the first requirement of judicial estoppel (inconsistent positions) was established.

### (2) Prior Adjudicator Adopted Earlier Position

The second factor requires that the party was successful in getting a court to adopt its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire*, 532 U.S. at 750 (quoting *Edwards*, 690 F.2d at 599). This factor is also met. Here, the Board, an administrative body to which judicial estoppel applies, accepted Sherwin's extensive arguments about Perez's inflexibility, including Dr. Brandenburger's tests. *See Trs.*, 593 F.3d at 1354 ("Judicial estoppel applies just as much when one of the tribunals is an administrative agency as when both tribunals are courts.").

The Board found "the evidence submitted by [Sherwin] persuasive to support the position that one of ordinary skill in the art would not have used the coatings of Perez." Appendix at 10, *Valspar I*. Specifically, the Board relied on the tests conducted by Dr. Brandenburger that showed

that "the compositions of Perez would not be suitable as can coatings due to a lack of flexibility" because the coatings lack BPA-based epoxy. *Id.* at 12.

Sherwin succeeded in convincing the Board to adopt its position that Perez was BPA-free—resulting in the reversal of the examiner's rejection. That adoption satisfies the second prong of the judicial estoppel inquiry.[8]

### (3) Unfair Advantage or Unfair Detriment on Opposing Party

This third factor is also satisfied. The Special Master in this case found both that it would be "unfair that Sherwin gets another bite in characterizing the Perez Patent's disclosure over six years later . . . when it so clearly articulated its position in 2012" and that it would be "highly

---

[8] Sherwin does not argue that vacatur of the Board's decision by our court prevents judicial estoppel here, so we need not address the issue, but we note that "[j]udicial estoppel may apply because a court accepted the party's position, even though the party lost the judgment." Wright & Miller, § 4477.2 Preclusion of Inconsistent Positions—Reliance by Court, 18B Fed. Prac. & Proc. Juris. (3d ed.). "[J]udicial estoppel may lie when '[e]ven though [the party] did not prevail on the appeal as a whole, he did prevail on the subsidiary question of what issues were to be decided by the court." *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed. Cir. 1995) (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (second and third alterations in original)). *See also Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1379 (Fed. Cir. 2020) (explaining that to apply judicial estoppel, a party "must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition" (quoting *Perry v. Blum*, 629 F.3d 1, 11 (1st Cir. 2010))).

22    SHERWIN-WILLIAMS COMPANY v. PPG INDUSTRIES, INC.

prejudicial to PPG who has relied on that statement in the interim years." J.A. 29326. The district court found that "PPG would be prejudiced simply by having to litigate an issue that was resolved by Sherwin's admission before the USPTO." J.A. 76 n.4. We agree with PPG that allowing Sherwin to change its position now would impose unfair prejudice on PPG.

Sherwin-Williams argues, however, that a showing of bad faith is required to judicially estop its change in position, relying on Third Circuit law. *See Chao v. Roy's Constr. Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008). Federal Circuit law imposes no such requirement, nor do the Supreme Court cases.

We conclude that judicial estoppel applies. When judicial estoppel applies, a party "may not thereafter, simply because his interests have changed, assume a contrary position." *Trs.*, 593 F.3d at 1353 (quoting *New Hampshire*, 532 U.S. at 749). Thus, if the court properly finds a party to be judicially estopped from taking a contradictory position to one previously asserted, that party is bound to its previous position and cannot introduce evidence contradicting it—as Sherwin-Williams agreed. Oral Arg. 7:47–8:07 (The Court: "So you agree that you can't refute it if there's a judicial estoppel?" Counsel for Sherwin-Williams: "If it is an estoppel, then we are estopped . . . ."). Because judicial estoppel applies, the district court properly refused to allow Sherwin to present evidence contradicting its earlier position.

We affirm the district court's denial of Sherwin's motion for JMOL and a new trial.

## II. PPG's Cross-Appeal

PPG cross-appeals the district court's determination that Sherwin's unilateral covenant not to sue with respect to the parent patents in the reexamination did not create an implied license for use of its continuation patents.

Although this issue is moot as to the asserted claims found invalid in this case, PPG filed a counterclaim seeking an implied license with respect to the other claims of the asserted patents. Under these circumstances, we agree that the cross-appeal is not mooted by the affirmance of invalidity of the asserted claims.

On appeal, PPG points to several cases to support the proposition that "[a]bsent mutual intent to the contrary, a patentee's covenant not to sue on parent patents as to an accused product confers an implied license covering patents asserted against the same product that disclose the same subject matter as the parent patents." Appellee Response Br. 62; *see also Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F.3d 691, 696 (Fed. Cir. 2020) (citing *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011)).

But, as PPG acknowledges, these cases "all involve bilateral covenants." Appellee Response Br. 63. We find this distinction important. Absent a bilateral covenant, we do not think there would be a presumption that any implied license extends to any continuation patents not specifically covered by the covenant. Because it is a unilateral covenant, only Sherwin's intent would be relevant in interpreting the scope. On its face, the covenant not to sue does not extend to the continuation patents. It is explicitly directed only to "infringement of any claim of the '047 or '876 patents." J.A. 16894.

The dismissal of the appeal in *Valspar I* as moot does not imply that the covenant was intended to cover continuation patents.[9] We explained that the "breadth of

---

[9]   PPG argues that the court must have concluded that the covenant extends to the continuation patents because the collateral consequences (future application of the

24    SHERWIN-WILLIAMS COMPANY v. PPG INDUSTRIES, INC.

Valspar's Covenant Not To Sue" "absolv[ed] PPG (and its subsidiaries and customers) of any possible infringement of the subject matter *of these patents*." *Valspar I*, 679 F. App'x at 1005 (emphasis added). We were thus explicit that the mootness holding only concerned the parent patents at issue in that case.

At the same time, we were well aware that there was ongoing litigation over the continuation patents in the District of Minnesota at the time we dismissed *Valspar I* as moot. *See id.* at 1004 ("Valspar thereafter filed an infringement suit on related patents in the Minnesota District Court."). We affirm the district court's finding that Sherwin's Covenant Not to Sue did not create an implied license to the continuation patents.

## AFFIRMED

### Costs

No costs.

---

covenant to other claims) would have prevented the case from being moot. There is no indication that the court considered collateral consequences when concluding that the case was moot, and it is unclear whether collateral consequences could prevent an appeal from an IPR decision from becoming moot. *Valspar I*, 679 F. App'x at 1005. In any event, it is too late for PPG to raise that argument here.

APPENDIX A

The asserted claims, claim 28 of the '663 patent; claim 7 of the '012 patent; claim 40 of the '763 patent; claim 26 of the '900 patent; and claim 6 of the '854 patent, are included below (emphases added).

Claim 28 of U.S. Patent No. 8,617,663:

16. A method, comprising the steps of:

(a) providing an aqueous coating composition that includes a latex polymer that is <u>substantially free of bound BPA</u> and aromatic glycidyl ether compounds and is made without using PVC compounds, wherein the latex polymer is formed by emulsion polymerizing a mixture of ethylenically unsaturated monomers comprising 0.1 to 30 weight percent oxirane functional group-containing monomer, based on the weight of the mixture, in the presence of an acid- or anhydride-functional polymer;

and

(b) spray applying the coating composition to an <u>interior surface of a food or beverage can</u> or a portion thereof.

28. The method of claim 16, wherein the coating composition comprises a quaternary salt linkage.

Claim 7 of the U.S. Patent No. 8,835,012:

1.  A method, comprising the steps of:

receiving a coating composition that includes an emulsion polymerized latex polymer that comprises a reaction product of an ethylenically unsaturated monomer component polymerized in the presence of an aqueous dispersion of a salt of an acid- or anhydride-functional polymer, wherein the ethylenically unsaturated monomer component includes an oxirane group-containing monomer, and wherein the coating composition is

made without using PVC compounds, BPA, or aromatic glycidyl ether compounds; and

spray applying the coating composition onto an interior surface of an aluminum beverage can including a body portion and a bottom end portion.

5. The method of claim 1, wherein the salt of an acid- or anhydride-functional polymer comprises a salt of an acid- or anhydride-functional polymer and a tertiary amine.

7. The method of claim 5, wherein the acid- or anhydride- functional polymer comprises an organic-solution polymerized acid- or anhydride functional polymer.

Claim 40 of the U.S. Patent No. 9,242,763

34. A method, comprising the steps of:

receiving a coating composition that includes an emulsion polymerized latex polymer that comprises a reaction product of an ethylenically unsaturated monomer component polymerized in the presence of an aqueous dispersion of a salt of an organic-solution polymerized acid- or anhydride-functional acrylic polymer and an amine, and wherein the ethylenically unsaturated monomer component includes an oxirane-group containing monomer and at least 40 wt-% of the ethylenically unsaturated monomer component consists of one or more monomer types selected from alkyl acrylates and methacrylates;

spray applying the coating composition onto an interior surface of an aluminum beverage can including a body portion and a bottom end portion; and

curing the coating composition to form a cured coating.

35. The method of claim 34, wherein the coating composition is substantially free of bound BPA and aromatic glycidyl ether compounds.

40. The method of claim 35, wherein the cured coating exhibits a global extraction result of less than 50 ppm.

Claim 26 of U.S. Patent No. 9,415,900

1.   An inside spray beverage can coating composition, comprising:

an emulsion polymerized latex polymer that is prepared from ingredients including:

a salt of an acid- or anhydride-functional acrylic polymer and an amine;

an ethylenically unsaturated monomer component that includes a vinyl aromatic compound and an oxirane-group containing monomer; and

water;

wherein the coating composition is substantially free of bound bisphenol A, and wherein the coating composition is suitable for forming an inside spray coating of a two-piece drawn and ironed aluminum beverage can.

24. The coating composition of claim 1, wherein the acid- or anhydride-functional acrylic polymer comprises an organic-solution polymerized acid- or anhydride-functional acrylic polymer.

26. The coating composition of claim 24, wherein the oxirane-group containing monomer is present in an amount of more than 5 wt-% to 30 wt-%, based on the weight of the ethylenically unsaturated monomer component.

Claim 6 of U.S. Patent No. 9,862,854

1. An inside spray beverage can coating composition, comprising an emulsion polymerized latex polymer

prepared by emulsion polymerizing an ethylenically unsaturated monomer component in the presence of an aqueous dispersion of a salt of an <u>organic-solution polymerized</u> acid- or anhydride-functional acrylic polymer and a tertiary amine;

wherein:

the salt of the organic-solution polymerized acid- or anhydride-functional acrylic polymer comprises more than 15 wt-% acid- or anhydride-functional monomers, based on the weight of polymerizable unsaturated monomer used to generate the acid- or anhydride-functional acrylic polymer; and

the ethylenically unsaturated monomer component includes an alkyl (meth)acrylate, a vinyl aromatic compound and an oxirane-group containing monomer;

the <u>inside spray beverage can coating</u> composition <u>is substantially free of mobile and bound bisphenol A</u>;

the inside spray beverage can coating composition, when spray applied onto an interior of a 12 ounce two-piece drawn and ironed aluminum beverage can at 120 to 130 milligrams per can coating weight and cured at 188° C. to 199° C. (measured at the can dome) for 30 seconds, exhibits:

(i)  <u>a global extraction result of less than 50 ppm</u>; and

(ii)  <u>a metal exposure of less than 3 mA on average</u> when the can is filled with 1% NaCl in deionized water and tested pursuant to the Initial Metal Exposure test method disclosed herein; and

the inside spray beverage can coating is made without using PVC compounds.

6. The coating composition of claim 1, wherein the coating composition includes a phenoplast crosslinker.